IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| PANINI AMERICA, INC., § § Plaintiff, § § v. § § SONESTA TECHNOLOGIES, INC., § § Defendant. § | Civil Action No. 1:23-cv-21473-JEM |

**PANINI AMERICA, INC.'S *EX PARTE* MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Plaintiff Panini America, Inc. ("Panini"), pursuant to 15 U.S.C. § 1116, 17 U.S.C. § 502, and Federal Rule of Civil Procedure 65, moves *ex parte* for entry of a temporary restraining order and, upon expiration of the temporary restraining order, a preliminary injunction against defendant Sonesta Technologies, Inc. d/b/a BangBros ("Defendant").

**I.    INTRODUCTION**

As set forth in Panini's Complaint, Panini is a leading retailer of collectible sports trading cards, including trading cards with autographs and memorabilia. Defendant is an adult-themed company that produces and distributes trading cards that include pornographic images and signatures, including on its commercial website at the web domain www.BangBros.com. Panini has absolutely no business relationship or other association with Defendant.

Panini is the owner of certain federally registered trademarks, having the exclusive right to use those trademarks in connection with collectible trading cards and memorabilia. Defendant does not have, nor has ever had, the right or authority to use any Panini trademark. Yet, Defendant is currently selling trading cards featuring images of adult entertainment actresses that include Panini's federally registered trademarks. Panini has not consented to the use of its trademarks in association with any pornographic material, including the unauthorized and infringing trading

cards being sold by Defendant that intentionally copy the exact style and design of Panini's trademarks.

Defendant's trademark infringement has created, and likely will continue to create, a false impression to consumers that Defendant and its adult-themed trading cards are somehow affiliated with, sponsored or endorsed by Panini. Defendant is intentionally misleading and confusing consumers into believing that there is a business relationship between Defendant and Panini. Panini, however, does not—and has never—engaged in the sale of trading cards featuring adult entertainment actresses or had any other business activities related to the pornography industry.

Some of the consumers of Panini's trading cards are minors who should not access or be offered the content contained within Defendant's trading cards that infringe upon Panini's trademark rights.

Defendant's trademark infringement and other wrongful conduct has caused irreparable harm to Panini's esteemed reputation and goodwill in the sports trading card industry. Every day Defendant's conduct is allowed to continue, the damage to Panini's reputation will be exacerbated. The Court should enter the requested temporary restraining order prohibiting Defendant from further wrongful use of Panini's trademarks, including to protect Panini's rights and the rights of the consuming public, including minors.

## II.     FACTUAL BACKGROUND

### A.     Panini's Business and Trademarks

Panini is an industry leader in the sports trading card and memorabilia industry in the United States and internationally. Declaration of Mark Warsop ("Warsop Decl.") ¶ 3, filed concurrently herewith. Panini holds license agreements with the major professional sports leagues

and players' associations, including basketball (the National Basketball Association, "NBA") and football (the National Football League, "NFL"), among others. *Id*. ¶ 4.

Panini randomly assorts and inserts its trading cards into sealed boxes and packs, and then sells them online or to authorized distributors. Warsop Decl. ¶ 6. Panini's sets of cards are issued under different names (brands or collections), at different price points, for each of the three major sports, e.g. Panini Prizm, Donruss Optic, Panini National Treasures, Panini Obsidian, Panini Select, Panini Black and Panini Immaculate. *Id*. Some Panini trading card sets include inserts or specially identified cards such as "Rated Rookies" (new players identified as having the most potential to be great someday) or "Kaboom" insert cards (limited print cards with eye-catching designs). *Id*. The iconic "Rated Rookie" designation has been used on sports trading cards since 2012 and "Kaboom" cards have been included in card sets since 2013. *Id*. Significant work goes into designing a card set prior to its release date. *Id*. Panini's commercial Internet website at "PANINIAMERICA.NET" ("Panini Domain") is among the numerous avenues used by Panini in the marketing and sale of its sports trading cards. *Id*. ¶ 7.

Panini is the owner of, among others, the unique and proprietary trademarks and tradenames "PANINI," "RATED ROOKIE," "PRIZM," "DONRUSS," "KABOOM," "OPTIC," "OBSIDIAN," "SELECT," "BLACK," "IMMACULATE" and "NATIONAL TREASURES" in both word and design formats including, without limitation, in the stylized logo design formats  and (collectively, the "Panini Marks"). Warsop Decl. ¶ 8. Panini uses the Panini Marks in interstate commerce in connection with its nationwide marketing and sale of collectible trading cards, including sports trading cards ("Panini Products"). *Id*. Panini has used the Panini Marks in connection with its marketing and sale of sports trading cards, some as early

3

as 2009, and has acquired trademarks and their associated goodwill from companies existing prior to 2009.[1]  *Id*.  Panini is the exclusive owner of the Panini Trademarks and the Panini Domain.  *Id*.

Panini owns the following trademark registrations issued by the U.S. Patent and Trademark Office ("USPTO"):  Registration Nos. 3,910,377, 4,254,100, 4,338,050, 4,254,101, 4,427,994, 1,526,835, 5,228,965, 6,076,211, 2,421,081, 6,195,369, 4,678,6234,253,484 and its USPTO Ser. No. 90/004,362.[2] Declaration of Robert E. Nail ("Nail Decl.") ¶ 9 and Exhs. 5 and 6, filed concurrently herewith.  Under 15 U.S.C. § 1065, Panini's exclusive right to use its registered Panini Marks under its USPTO Registration Nos. 3,910,377, 4,254,100, 4,338,050, 4,254,101, 4,427,994, 1,526,835, 2,421,081, 4,678,623 and 4,253,484 in connection with its Panini Products has become incontestable. *Id*.

As a result of its extensive nationwide marketing efforts and its continuous use of the Panini Trademarks over many years, Panini has developed substantial rights and goodwill in the Panini Marks, and the public has come to associate such Marks with Panini as the source of origin of its well-regarded sports trading cards sought by collectors at the highest levels. Warsop Decl. ¶ 14. The Panini Products offered under the Panini Marks have been and continue to be recognized for excellence by consumers.  *Id*.  As a result of Panini's promotional activities and unsolicited consumer recognition, its Panini Marks have become famous in the United States in connection with its Panini Products in the trading card industry. *Id*.

Panini does not, and has never designed, manufactured, marketed or sold trading cards depicting pornographic materials or other adult entertainment products using any Panini Marks.

---

[1] The dates of first use of Panini's Marks are as follows::  2009 (PANINI),  June 5, 2012 (RATED ROOKIE), November 28, 2012 (PRIZM), February 1, 1981 (DONRUSS), August 26, 2013 (KABOOM), August 25, 2016 (OPTIC), August 12, 2019 (OBSIDIAN), June 1992 (SELECT), August 26, 2019 (BLACK) November 4, 2014 (IMMACULATE), and December 2010 (NATIONAL TREASURES).  Warsop Decl. ¶ 9.
[2] A table of Panini's Trademarks, registration numbers, registration dates and class/goods of each trademark is attached hereto as "Exhibit A."

4

Warsop Decl. ¶ 11.  Defendant's use of Panini's Marks in connection with trading cards depicting adult entertainment actresses and explicit pornographic images is unauthorized.  *Id*.

  **B.**  <u>**Defendant's Wrongful Use of Panini's Trademarks**</u>

  Defendant is a company with a pornographic film studio operating from Miami, Florida.  In March 2002, Defendant registered the domain www.bangbros.com with the domain registrar Directnic.com ("BangBros.com Domain").  Nail Decl. ¶ 6 and Exh. 3.  Since 2002, Defendant has owned and operated a website via the Bang Bros.com Domain to market and sell a vast collection of sexually oriented videos, photos and other pornographic materials.  *Id*.

  On or about December 12, 2022, Defendant registered the domain www.bangbros.cards with the domain registrar Tucows.com ("BangBros.cards Domain").  Nail Decl. ¶ 7, Exh. 4.  This commercially active website accessible via the Bangbros.cards Domain currently features Defendant's prominent use of the Panini Marks in connection with Defendant's marketing and offering for sale of adult themed trading cards to the public.  *Id*. ¶ 8. Defendant includes direct reference to Panini on its trading cards so as to intentionally and unfairly evoke Panini and the Panini Marks in the minds of consumers and otherwise misappropriate the benefit of the strong goodwill and fame associated with the Panini Marks.  *Id*.  ¶ 11.  Such trading cards sold on Defendant's website at the BangBros.cards Domain use marks identical to the Panini Marks, including "RATED ROOKIE," "DONRUSS," "KABOOM," "OPTIC," "OBSIDIAN," "SELECT," and "IMMACULATE".  *Id*.  Defendant does not, and has never, had the authority and consent of Panini to use any of the Panini Marks in the sale of trading cards or otherwise.  Warsop Decl. ¶ 10.

  Defendant's wrongful, unauthorized and infringing conduct is creating the false impression to consumers that Defendant and its goods and services are somehow affiliated with, sponsored or

endorsed by Panini, thereby intentionally misleading and confusing consumers into mistakenly believing that some form of business partnership or affiliation exists between Defendant and Panini. There is no business relationship—or any other relationship—between Panini and Defendant. Panini Decl. ¶ 5. Nor has any such relationship ever been contemplated by Panini. *Id*. Panini has never manufactured, marketed or sold "adult-themed" trading cards or any pornographic products. *Id*.

### C. Defendant's Unauthorized Trading Cards Are Causing Confusion in the Marketplace

The serious and irreparable harm Defendant's conduct is causing to Panini's reputation is not theoretical. There is actual confusion caused by Defendant's trading cards and the perceived association of such trading cards with Panini, leading the public to believe they are legitimate Panini trading cards. The confusion caused by Defendant's conduct is not limited to "unsophisticated" consumers and members of the public. Even trading card collectors and industry experts have stated they are confused by Defendant's cards which expressly claim they are *from Panini*. Nail Decl. ¶ 12.

Each day that passes causes additional irreparable harm to Panini's longstanding valuable reputation, fame and goodwill symbolized by its Panini Marks.

### III. ARGUMENT

The standard for obtaining a temporary restraining order and the standard for obtaining a preliminary injunction are the same, a party must establish "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005) (citing *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000)); *Levi*

*Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (applying test to a preliminary injunction in a Lanham Act case). Panini's evidence establishes all the requisite factors.

### A. Panini Is Likely To Succeed On the Merits of Its Claims

Panini is likely to succeed on each claim asserted in its Complaint for: (1) federal trademark infringement under section 32 of the Lanham Act, 15 U.S.C. sections 1114 and 1125 ("Lanham Act"); (2) federal dilution in violation of the Federal Trademark Dilution Act, 15 U.S.C. § 1125(c)(2)(C); (3) unfair competition under the Lanham Act; (4) unfair competition in violation of Florida's Deceptive and Unfair Trade Practices Act; (5) unjust enrichment; and (6) common law unfair competition. Dkt. No. 1 at ¶¶ 49-93.

#### 1. Defendant Has Clearly Violated Federal Trademark Law

Section 43 of the Lanham Act provides liability for trademark infringement if, without the consent of the trademark owner, a defendant uses "in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1). To prevail on its claim for trademark infringement, Panini must demonstrate: (1) ownership of the trademarks at issue; (2) Defendant's use of the trademarks without Panini's authorization; and (3) Defendant's use is likely to cause confusion, mistake, or deception of the source, affiliation or sponsorship of

Defendant's goods. 15 U.S.C. § 1114(a). Panini's evidence submitted herewith satisfies each requirement of 15 U.S.C. § 1125.

The first two elements of Panini's trademark claims are easily satisfied. Panini owns and has the exclusive right to use the Panini Marks, which are registered with the USPTO, and Panini has been using the Panini Marks for many years prior to the promotion and sale of Defendant's trading cards in the United States beginning in December 2022. *See* Warsop Decl. at ¶¶ 8, 9; Nail Decl. ¶ 13, Exh. 6. Second, Defendant has never had the right or authority to use any of the Panini Marks. Warsop Decl. ¶ 10.

Finally, Panini can demonstrate that the public is likely to be deceived or confused by the similarity of the marks at issue. *Ross Bicycles, Inc. v. Cycles USA, Inc.*, 765 F.2d 1502, 1506 (11th Cir. 1985) (citing *John H. Harland Co. v. Clarke Checks, Inc*., 711 F.2d 966, 972 (11th Cir. 1983)). Notwithstanding whether the violation is identified as an infringement, unfair competition, or false designation of origin, the determinative factor is a likelihood of consumer confusion. *Id*. at 1503-1504. With respect to likelihood of confusion, the Eleventh Circuit has long used a seven-factor test, weighing: (1) the strength of the mark; (2) the similarity of marks; (3) the similarity of the products; (4) similarity of the sales methods; (5) the similarity of advertising media; (6) defendant's intent; and (7) evidence of actual confusion. *See Ross Bicycles,* 765 F.2d at 1506. The seven factors listed are to be weighed and balanced and no single factor is dispositive. *Id.* Here, there is no need to balance the factors because every single factor weighs in favor of Panini and a finding that the public is likely to be deceived.

        a.       <u>Strength of the Panini Marks</u>

A trademark's strength is determined by viewing the mark in its entirety as it appears in the marketplace. *See Lone Star Steakhouse and Saloon, Inc. v. Longhorn Steaks, Inc*., 106 F.3d

355, 362 (11th Cir. 1997). Trademarks are classified in categories of increasing distinctiveness: "(1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). "The latter three categories of marks, because their intrinsic nature serves to identify a particular source of a product, are deemed inherently distinctive and are entitled to protection." *Id*.

It cannot be seriously disputed that Panini's Marks are strong, arbitrary and fanciful marks. Panini has used the Panini Marks on its trading cards, including sports trading cards, in interstate commerce since at least as early as 2009 (PANINI), June 5, 2012 (RATED ROOKIE), November 28, 2012 (PRIZM), February 1, 1981 (DONRUSS), August 26, 2013 (KABOOM), August 25, 2016 (OPTIC), August 12, 2019 (OBSIDIAN), June 1992 (SELECT), August 26, 2019 (BLACK) November 4, 2014 (IMMACULATE), and December 2010 (NATIONAL TREASURES) respectively. Warsop Decl. ¶ 9; Nail Decl. ¶¶ 8-11, 13 and Exh. 6. Panini's ownership of the Panini Marks is evidenced, in part, by registration of these marks with the USPTO. Nail Decl. ¶ 13 and Exh. 6. Under 15 U.S.C. § 1065, Panini's exclusive right to use its registered Panini Marks under its USPTO Registration Nos. 3,910,377, 4,254,100, 4,338,050, 4,254,101, 4,427,994, 1,526,835, 2,421,081, 4,678,623 and 4,253,484 in connection with its sports trading card products has become incontestable.

The Panini Marks have also acquired secondary meaning. The Panini Marks are among the most widely recognized trademarks in the trading card industry. Warsop Decl. ¶¶ 14, 15. Panini has expended substantial time, labor, skill, and expense in developing, advertising, and promoting the Panini Marks. *Id*. ¶ 15. The Panini Marks enjoy widespread recognition and are prominent in the minds of consumers. *Id*.

b.     Similarity of the marks

"The likelihood of confusion is greater when an infringer uses the exact trademark." *Turner Greenberg Associates, Inc. v. C & C Imports, Inc.*, 320 F. Supp. 2d 1317, 1332 (S.D. Fla. 2004) (citing *United States Jaycees v. Philadelphia Jaycees*, 639 F.2d 134, 142 (3d Cir. 1981)). Here, Defendant is using marks that are identical or nearly identical to the Panini Marks to sell its trading cards depicting adult entertainment actresses, including the marks "PANINI," "RATED ROOKIE," "PRIZM," "DONRUSS," "KABOOM," "OPTIC," "OBSIDIAN," "SELECT," and "IMMACULATE". *Compare* Nail Decl. Exh. 5 *with* Nail Decl. Exh. 6. Defendant's trading cards sold on Defendant's commercial website at the BangBros.cards Domain use Panini's exact logo mark design elements and color schemes associated therewith. *Id.* ¶ 11, Exh. 5. This factor weighs in favor of finding a likelihood of confusion.

c.     Similarity of the goods

"The greater the similarity between the products and services, the greater the likelihood of confusion." *John H. Harland Co*., 711 F.2d at 976; *see also Turner-Greenberg Associates*, 320 F.Supp.2d at 1332. Defendant is using Panini's Marks to sell the same type of goods—trading cards—that Panini sells. See Warsop Decl. ¶¶ 3, 6, 12; Nail Decl. ¶ 8. Because Defendant's Products bear the Panini Marks, Defendant's Products appear to be genuine Panini trading card products to consumers in the market. Therefore, this factor weighs heavily in favor of a finding of likelihood of confusion.

d.     Similarity of sales method and advertising method

Convergent marketing channels increase the likelihood of confusion. *See Turner Greenberg Associates, Inc*., 320 F. Supp. 2d at 1332. Both Panini and Defendant sell and advertise the subject trading card products using at least one of the same marketing channels, the Internet,

in the same geographical distribution areas within the United States, including the Southern District of Florida. See Warsop Decl. ¶ 16; Nail Decl. ¶ 14. Thus, the conditions of purchase for both parties are unmistakably identical and this factor weighs heavily in favor of finding a likelihood of confusion.

    e.  <u>Defendant's intent</u>

When an alleged infringer such as Defendant adopts a mark "with the intent of obtaining benefit from the plaintiff's business reputation, 'this fact alone may be sufficient to justify the inference that there is confusing similarity.'" *Turner Greenberg Associates, Inc.*, 320 F. Supp. 2d at 1333 (emphasis added) (quoting *Carnival Corp. v. Seascape Casino Cruises, Inc.*, 74 F. Supp. 2d 1261, 1268 (S.D. Fla. 1999)). In view that Defendant's trading cards are depicting marks *identical* to the Panini Marks with such trading cards clearly copying the design of Panini trading cards, there is no doubt that Defendant intentionally set out to copy Panini's Marks in a manner likely to generate confusion on the part of potential consumers. Indeed, Defendant's trading cards use Panini's exact logo mark design elements and color scheme associated therewith and some even expressly state the cards are from Panini. *Compare* Nail Decl. Exh. 5 *with* Exh. 6. Defendant undoubtedly knew about Panini, the Panini Marks and Panini's Domain before it began its infringing conduct. This factor also weighs in favor of finding a likelihood of confusion.

    f.  <u>Evidence of actual confusion</u>

Actual confusion is not a prerequisite to establishing a likelihood of confusion. *See Frehling Enters. V. Int'l Select Group, Inc.*, 192 F.3d 1330, 1340 (11th Cir. 1999). In this case, however, there is evidence of actual confusion in the marketplace. Even sophisticated sports trading card collectors and industry experts have been confused by Defendant's trading cards, many of which contain express references to Panini as the source of such cards. Nail Decl. ¶ 12.

In sum, all seven factors to determine likelihood of confusion weigh in Panini's favor and support a likelihood of success on the merits of Panini's trademark infringement claim.

        **2.**        **Panini Is Also Likely To Succeed on Its Common Law Claims For Unfair Competition and Common Law Trademark**

Whether a defendant's use of a plaintiff's trademarks created a likelihood of confusion between the plaintiff's and the defendant's products is also the determining factor in the analysis of unfair competition under the common law of Florida. *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 n.4 (11th Cir. 2001) ("Courts may use an analysis of federal infringement claims as a 'measuring stick' in evaluating the merits of state law claims."). Additionally, the analysis of liability for Florida common law trademark infringement is the same as the analysis of liability for trademark infringement under Section 32(a) of the Lanham Act. *PetMed Express, Inc. v. Medpets.com*, 336 F. Supp. 2d 1213, 1217-18 (S.D. Fla. 2004) ("The analysis of liability for Florida common law trademark infringement is the same as under the Lanham Act").

As discussed above, Panini has easily satisfied the elements of its trademark infringement claim against Defendant, establishing that a likelihood of confusion exists herein. Accordingly, Panini is also likely to succeed on the merits of its common law unfair competition and trademark infringement claims.

        **B.**        **Panini Is Suffering Irreparable Harm—and Will Continue Suffering Irreparable Harm—If Defendant's Conduct is Not Stopped**

Defendant's wrongful, unauthorized and infringing conduct is already causing confusion in the public, even amongst sophisticated consumers. Nail Decl. ¶ 12. Each day that passes, more consumers are exposed to Defendant's unauthorized trading cards, believing they are legitimate Panini products and that Panini is now selling trading cards depicting pornographic images featuring adult entertainment actresses. Of course, there is no relationship of any kind between

Panini and Defendant or any other pornography company. There could be no clearer example of irreparable harm if the requested relief in this application is not granted. Needless to say, Panini does not want its highly esteemed sports trading card brands associated with the adult entertainment and pornography industries.

Further, the clear infringement by Defendant alone is sufficient to satisfy the requisite "irreparable harm." The Eleventh Circuit has held that "a sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of … [a] substantial threat of irreparable harm." *Ferrellgas Ptnrs., L.P. v. Barrow*, 143 F. App'x. 180, 191 (11th Cir. 2005) (quoting *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1310 (11th Cir. 1998)). Such a finding of irreparable injury following a showing of likelihood of confusion is virtually always made in a case such as this, where a plaintiff has demonstrated it will lose control of its goodwill and reputation as a result of a defendant's activities. *Id.*

C. **Panini's Injury Easily Outweighs Any Harm An Injunction Will Inflict on Defendant**

Panini has expended substantial time, money, and other resources to develop the quality, reputation, and goodwill associated with the Panini Marks. See Warsop Decl. at ¶¶ 14, 15. The ongoing harm to Panini's reputation and goodwill cannot be seriously disputed. Defendant's conduct threatens permanent damage to Panini, whose market—including parents and children that collect trading cards—may believe Panini is now associated with pornography and sell adult entertainment products.

On the other hand, the proposed injunctive relief would cause *no harm* to Defendant, which has no right to sell trading cards purporting to be Panini cards featuring unauthorized use of the Panini Marks. Defendant will therefore suffer no legitimate hardship in the event a temporary restraining order is issued because Defendant has no right to engage in its present infringing

13

activities. Panini's application and proposed temporary restraining order is narrowly tailored to protect the trademark rights of Panini and does not seek to prevent the Defendant from engaging in other lawful commerce it may participate in that does not infringe the Panini Marks.

### D. An Injunction Would Serve the Public Interest

Defendants are engaged in illegal activities and are directly defrauding the consuming public by selling Defendant's trading cards as if they are affiliated, endorsed or produced by Panini. "In trademark cases, the public as a whole has a paramount interest not to be confused by defendant's infringement." *Nailtiques Cosmetic Corp. v. Salon Sciences, Corp.*, 1997 WL 244746, at *5 (S.D. Fla. 1997) (citations omitted). Panini is entitled to have control over the Panini Marks, how and where the marks are used and any revenue generated from goods and services using Panini's Marks.

A holder of a trademark should not have its rights willfully infringed. Even more so here where, not only are Panini's rights being infringed, but the years of work to build goodwill and an esteemed reputation in the marketplace are being threatened. Panini, just as any other family oriented business, does not want to be perceived by the public as being affiliated with a pornography company.

### E. Panini's Requested Equitable Relief Sought is Appropriate.

The Lanham Act authorizes courts to issue injunctive relief "according to principles of equity and upon such terms as the court may deem reasonable ... to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title." 15 U.S.C. § 1116(a). Entry of an order immediately enjoining Defendant's unauthorized and unlawful use of Panini's trademarks is appropriate.

Panini requests an order requiring Defendant—and all persons acting in concert with Defendant—immediately cease all advertising, marketing, selling or rendering any goods or services under or otherwise using or continuing to use the Panini Marks or any other marks that are confusingly identical or similar to the Panini Marks including, without limitation, on or in connection with any and all printed or digital trading cards, e-commerce stores, domain names, and websites owned and operated, or controlled by Defendant. Defendant should also be enjoined from representing to any other person or entity that Defendant has authority to use the Panini Marks or from representing to any other person or entity that Defendant or its goods or services are in any manner associated with, connected to, related to, sponsored by, affiliated with, endorsed by, approved by or recommended by Panini. In addition, Defendant should be required to report to Panini at least every thirty (30) days its compliance with the preliminary injunction.

Such relief is necessary to stop the ongoing harm to Panini's trademarks, goodwill, and to prevent Defendant from continuing to benefit from the increased consumer traffic to their illegal operations created by their unlawful use of the Panini Marks. Courts have authorized immediate injunctive relief for similar, less egregious violations, involving the unauthorized use of intellectual property rights. *Mycoskie, LLC v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 19-cv-60518-BLOOM, 2019 WL 1206340 (S.D. Fla. March 14, 2019); *adidas AG v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 19-cv-60457-CIV, 2019 WL 1989208 (S.D. Fla. Feb. 25, 2019); *Apple Corps Ltd. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 19-cv-60404-WILLIAMS, 2019 WL 1989221 (S.D. Fla. Feb. 20, 2019).

### F. A Bond Should Secure the Injunction.

The posting of security upon issuance of a temporary or preliminary injunction is vested in the Court's sound discretion. Fed. R. Civ. P. 65(c). Because of the unequivocal nature of Panini's evidence of infringement and the unquestioned irreparable harm it will suffer, Panini respectfully requests this Court require it to post a bond of no more than five thousand dollars ($5,000.00), subject to increase at the Court's discretion should an application be made in the interest of justice.

## IV. CONCLUSION

Panini respectfully requests the Court grant its *ex parte* application and enter a temporary restraining order as to Defendant in the proposed order submitted herewith and schedule a hearing on Panini's Motion for a Preliminary Injunction before the expiration of the temporary restraining order. Panini's application and proposed temporary restraining order is narrowly tailored to protect the trademark rights of Panini and does not seek to prevent the Defendant from engaging in any lawful commerce.

Dated: April 18, 2023 Respectfully submitted,

/s/ *Dale A. Evans Jr.*
Dale A. Evans Jr.
Florida Bar Number: 98496
Dale.evans@lockelord.com
LOCKE LORD LLP
777 South Flagler Drive
East Tower Suite 215
West Palm Beach, Florida 33401
Telephone: (561) 833-7700
Facsimile: (561) 828-7994

Charles E. Phipps (*pro hac vice* to be filed)
Florida Bar No. 1009860
cphipps@lockelord.com
Robert E. Nail (*pro hac vice* to be filed)
RNail@lockelord.com
LOCKE LORD LLP
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201-6776
Telephone: (214) 740-8000
Facsimile: (214) 740-8800
**ATTORNEYS FOR PLAINTIFF**
**PANINI AMERICA, INC.**

132222378